UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

VS.                                             CRIM. NO.: 24-CR-00186 SVN

RICARDO ESTRADA

## MOTION TO SUPPRESS PAINTER HILL ROAD EVIDENCE WITH POINTS & AUTHORITIES

NOW COMES the defendant herein, RICARDO ESTRADA, by and through his counsel, David J. Wenc, and moves this Honorable Court to suppress evidence seized from the Painter Hill Road Airbnb in Roxbury, Connecticut based on the warrantless search and seizure of two cellular devices, two black balaclava-style face masks, and two jump ropes from inside the Painter Hill Road Airbnb.

Background:

As part of its investigation, law enforcement learned that a defendant, BORRERO, paid six suspects to travel from Florida to New York, NY on or about August 23-24, 2024. Some of the suspects spent the night together in New York City on August 23, 2024. They then travelled to Connecticut, where they stayed at a house on Painter Hill Road in Roxbury, Connecticut.

1 | Page

On August 25, 2024, the day of the attempted carjacking and kidnapping, the suspects traveled in three separate cars (a white Honda sedan, a van, and a dark silver Nissan sedan) to the victims' residence in Danbury, CT. They then conducted surveillance on the victims' home and vehicle, a Lamborghini. When the Lamborghini left the residence, the suspects followed in the three vehicles. At some point, the white Honda rear-ended the Lamborghini and then four of the suspects jumped out of the three vehicles, removed the victims from their car, and forced them into the back of the van where they were restrained with duct tape. Four of the six suspects, namely, defendants, ROMERO, BORRERO, DIAZ, PENA, were apprehended near the scene of the carjacking / kidnapping.

As part of this investigation, law enforcement agents reviewed a group text message chat which included cell phones belonging to defendants, ROMERO, BORRERO, DIAZ, PENA, and two other individuals utilizing telephone numbers ending 6964 and 8276, later identified as defendants, ESTRADA, and RIVAS, respectively.

Based on the details recovered from a group text message thread between the suspects involved in this incident/investigation,

investigators determined two additional suspects were not apprehended. Based on the information recovered from the group text message, investigators believed those suspects to be RIVAS and ESTRADA.

Danbury Police Department Detectives searched telephone numbers ending 6964 and 8276 through law enforcement databases subscribed to the City of Danbury, which returned carrier information for T-Mobile for both numbers.

Based on information from the group text message, investigators also determined the suspects in this incident rented an Airbnb located on Painter Hill Road in Roxbury, CT. The residence on Painter Hill Road was a four-bedroom, large white home with a hot tub in the rear and a long, gravel driveway, which was consistent with information learned during the investigation about where the suspects were staying.

Investigators also reviewed text messages that showed shared location information advising the six suspects to return to a house on Painter Hill at approximately 5:36 p.m. on August 25, 2024, which was when this incident occurred.

DPD Detectives completed an emergency request form for T-

Mobile based on the severity of the incident, and the possibility the remaining suspects could alter or destroy evidence before their apprehension. T-Mobile subsequently provided records which revealed telephone number ending 6964 (the phone number belonging to ESTRADA) was pinging in an area consistent with the device being located on Painter Hill Road, Roxbury, CT.

Based on the investigation, investigators believed the two outstanding suspects, RIVAS and ESTRADA, returned to the house on Painter Hill Road in the white Honda Civic. So, DPD Detectives, Special Agents of the FBI, and Connecticut State Police Troopers responded to the residence on Painter Hill Road, Roxbury, CT early in the morning on August 26, 2024.

Upon arrival at the house on Painter Hill Road, Roxbury, CT, investigators located the Honda Civic, which had heavy front-end damage, parked and unoccupied in the driveway of the residence. The damage to the car was consistent with the accounts of the victims, who told law enforcement that the white Honda Civic rear-ended their vehicle, which began the carjacking.

Officers subsequently contacted RIVAS and ESTRADA, who were

inside the residence on Painter Hill Road. Both parties exited the residence and were taken into custody without incident and eventually transported to the DPD. The Honda Civic was towed to the Danbury Police Headquarters.

Investigators subsequently cleared the residence to confirm no other individuals were inside the residence. During the search, investigators observed in plain view: two cellular devices, two black balaclava-style face masks, and two jump ropes, all of which were seized. The balaclava masks were consistent with the face masks provided in descriptions of the suspects by both victims. The jump ropes were consistent with the jump ropes found in the Ram ProMaster van. It was believed that these jump ropes were likely planned to be used to restrain the victims.

## POINTS & AUTHORITIES

**LAW ENFORCEMENT CANNOT RELY ON THE "PLAIN VIEW" DOCTRINE TO SEIZE EVIDENCE FROM INSIDE PAINTER HILL ROAD WHEN INVESTIGATORS ARE NOT LAWFULLY INSIDE THE PAINTER HILL ROAD AIRBNB**

Under the "plain view" doctrine, an officer may seize as evidence property that is in plain view if the officer is already lawfully on the premises to search for evidence and the incriminating nature of the

evidence is immediately apparent. *Horton v. California*, 496 U.S. 128, 137 & n.7 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). The "plain view" doctrine does not give officers the right to seize evidence in plain view when they are not in a location to lawfully seize it (that is, if the police see drugs through a window of a house, they cannot enter the house to seize the drugs without a warrant or exception to the warrant requirement).

In the instant case, investigators justified their entry into the Painter Hill Road Airbnb on the basis that they cleared the residence to confirm no other individuals were inside the residence. However, law enforcement did not point to any specific, articulable facts indicating that any other individual presented a potential danger inside the residence after RIVAS and ESTRADA voluntarily exited the residence.

Before arriving at the Painter Hill Road Airbnb, law enforcement knew that there were six suspects. Four suspects were already apprehended before law enforcement arrived at the residence. Investigators determined two additional suspects were not apprehended. Therefore, once RIVAS and ESTRADA were taken into custody outside the residence, there was no articulable reason to

believe that there were other individuals inside the Airbnb. Law enforcement should have obtained a search warrant before entering the Painter Hill Road Airbnb and seizing evidence from inside the residence.

To the extent law enforcement seeks to justify the search and seizure based on a "protective sweep" for additional individuals, then that argument should fail.

**LAW ENFORCEMENT CANNOT RELY ON THE "PROTECTIVE SWEEP" DOCTRINE WHEN THERE IS NO REASONABLE BELIEF THAT THE AREA HARBORS AN INDIVIDUAL POSING A DANGER.**

Clearing a house for other people can be an exception to obtaining a search warrant under the "protective sweep" doctrine. This doctrine allows law enforcement officers to conduct a limited, warrantless search of a home to ensure their safety and the safety of others when they have a reasonable belief that the area harbors an individual posing a danger.

The Supreme Court in <u>Maryland v. Buie</u> 494 U.S. 325 (1990) established that officers executing an arrest inside a home may conduct a protective sweep if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors

an individual posing a danger to those on the arrest scene" <u>U.S. v. Barone</u> June 25, 2010, 721 F.Supp.2d 261, 2010 WL 2594614; <u>U.S. v. Fadul</u>, April 21, 2014, 16 F.Supp.3d 270, 2014 WL 1584044. This sweep is limited to a cursory inspection of spaces where a person may be found and must last no longer than necessary to dispel the reasonable suspicion of danger. <u>U.S. v. Hassock</u>, November 20, 2009, 676 F.Supp.2d 154, 2009 WL 4438125.

Additionally, the Second Circuit has held that officers may conduct a protective sweep when they are lawfully present in a home under lawful process, such as an order of protection, if they possess articulable facts that would warrant a reasonably prudent officer in believing that the area harbors an individual posing a danger. <u>U.S. v. Miller</u>, November 16, 2005, 430 F.3d 93, 2005 WL 3065761.

However, the protective sweep must be justified by specific and articulable facts indicating a potential danger, and it cannot be a full search of the premises. For example, in <u>U.S. v. Rudaj</u>, October 03, 2005, 390 F.Supp.2d 395, 2005 WL 2420362, the court allowed a protective sweep of a bedroom when agents had articulable facts supporting an inference that the area harbored an individual posing a danger.

In summary, clearing a house for other people can be an exception to obtaining a search warrant under the "protective sweep" doctrine. However, it is subject to strict limitations and must be based on specific, articulable facts indicating a potential danger.

In the instant case, law enforcement apprehended all six suspects. Law enforcement did not articulate any specific or articulable facts indicating that there was another individual inside the Painter Hill Road Airbnb that would present a potential danger.

Without a search warrant for the Painter Hill Road Airbnb, the seized evidence, namely, the two cellular devices, two black balaclava-style face masks, and two jump ropes should be suppressed.

**ANY EVIDENCE OBTAINED FROM A SEARCH OF THE ESTRADA CELL PHONE SHOULD BE EXCLUDED AS FRUIT OF THE POISONOUS TREE**

In *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 415 (1963), the Court held that "in order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, . . . , this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search . . . The exclusionary prohibition

extends as well to the indirect as the direct product of such invasions . . . ." The "fruit" of an official illegality can come in the form of tangible as well as verbal evidence.

In the instant case, the warrantless search and seizure of evidence from the Painter Hill Road Airbnb tainted any search of the Estrada cell phone. Therefore, the search results from the Estrada cell phone should be suppressed as "fruit of the poisonous tree."

## CONCLUSION

Based upon the foregoing, the defendant, Estrada, requests that this Court suppress the evidence seized from the Painter Hill Road Airbnb as well as any evidence obtained from a search of the Estrada cellphone.

The defendant, RICARDO ESTRADA, requests that this Court hold an evidentiary hearing.[1]

                    DEFENDANT,
                    RICARDO ESTRADA

                    BY /s/ *David J. Wenc*
                        David J. Wenc,
                        His Attorney
                        Wenc Law Firm, LLC
                        184 Dusky Lane
                        Suffield, CT 06078
                        Tel. (860) 371-6633
                        FED BAR # CT00089
                        dwenc@wenclawfirmllc.com

---

[1] A Change of Plea hearing is scheduled for February 11, 2025. Defense counsel anticipates that the hearing will proceed and the case will be resolved without the need for a trial.

## CERTIFICATION

I hereby certify that a copy of the above Motion to Suppress Evidence was served upon the United States Attorney's Office January 28, 2025, as well as Chambers via CMECF and email.

*/s/ David J. Wenc ct#00089*

David J. Wenc, Esquire
