UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>RICARDO ESTRADA<br><br>      Defendant | ) Case No.: 3:24-CR-00186 (SVN)<br>)<br>) REPLY TO THE GOVERNMENT'S<br>) SENTENCING MEMORANDUM [DOC. 181<br>) & DOC. 181-1] BY THE DEFENDANT,<br>) RICARDO ESTRADA<br>)<br>)<br>) |

The Defendant, RICARDO ESTRADA, respectfully files this reply to the government's sentencing memorandum [Documents 181 & 181-1] as an aid to the Court regarding his sentencing scheduled for November 3, 2025.

**Attributions to USPO Leone**: The government stated that Mr. Estrada's arrest history raised concerns for USPO Leone about the dangers posed by Mr. Estrada and his risk of recidivism. Govt. Memo. at p. 7. However, USPO Leone simply stated the Mr. Estrada's arrest history was "concerning" without any characterization such as the dangers posed or the risk of recidivism. PSR, p. 24, para. 124.

**Attributions to the Defense Memorandum**: The government stated that the defendant did not mention the sentencing factor of "just punishment." Govt. Memo. at p. 7. However, the defense memorandum stated that one of the numerous factors that guide sentencing includes "the need for the sentence imposed to reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense." Defense Memo. at p. 2. The defense memorandum went on to address the issue of "just punishment" and "the need to protect the public from further crimes of the defendant." Defense Memo. at p. 10. Also, the defense

memorandum continued to address the issue of "just punishment" in the section dedicated to general deterrence. Defense Memo. p. 16.

In addition, the government stated that "[t]he defendant also is dismissive of the Sentencing Guidelines as a benchmark for what an appropriate sentence would be in this case." Govt. Memo. at p. 8. The defendant was hardly "dismissive." The defendant sought to address the numerous factors that guide sentencing throughout his memorandum. In fact, the defendant concluded his memorandum by requesting this Court to impose a sentence that is "no more than necessary" to further the principles set forth in USSG s. 3553(a). Defense Memo. at p. 21.

<u>Time Already Spent in State Custody</u>: The government stated that the Federal Bureau of Prisons will credit Mr. Estrada's federal term of imprisonment for all the time spent in custody that is not credited to another sentence. The government also stated that it anticipates the State's Attorney for the Judicial District of Danbury will nolle the pending state charges after Mr. Estrada is sentenced in the instant case. Govt. Memo. at p. 8.

Defense counsel recently communicated with AUSA Peck about this issue. It is defense counsel's understanding that the State's Attorney for the Judicial District of Danbury will nolle the state charges pending against Mr. Estrada once he is sentenced in the instant case. In addition, defense counsel understands that the government will notify the States Attorney once Mr. Estrada is sentenced. As a result, it appears that the defendant's argument for a downward departure pursuant to USSG sec. 5G1.3(b) may be moot.

<u>The Defendant's Mental and Emotional Conditions</u>: The government stated that Mr. Estrada's mental and emotional conditions did not make his case extraordinary or atypical. Govt. Memo. p. 10. However, Mr. Estrada's mental and emotional conditions

go beyond substance abuse and the influence of his peers. Mr. Estrada's history of self-harm, namely cutting his arms and legs with glass and a razor blade, should be considered atypical and extraordinary. Dr. Baranoski wrote that from 2022 through 2024, Mr. Estrada had at least four emergency room visits related to a suicide risk and an opioid overdose. Report of Psychological Evaluation, pp. 8-9. USPO Leone also addressed Mr. Estrada's mental and emotional conditions, including the history of depressive thoughts, including thoughts of suicide as well as self-harm, including cutting behaviors. PSR, p. 17, para(s). 79-82. In addition, defense counsel attached to his sentencing memorandum a copy of the Report of a Law Enforcement Officer Initiating an Involuntary Examination. On March 29, 2024, law enforcement encountered Mr. Estrada who "felt like killing himself" and who exhibited multiple cuts to his forearm.

Mr. Estrada's mental and emotional conditions are not ordinary or typical of federal defendants. Rather, his conditions appear extraordinary and atypical. As a result, he requests that this Court consider these conditions in mitigation when imposing sentence.

<u>Dr. Baranoski's Report</u>: The government questioned the utility of Dr. Baranoski's report in that it did not receive a copy of her resume, information about her fee arrangement, information pertaining to prior testimony, her relationship with defense counsel as well as other information. Govt. Memo. p. 10.

Before the government filed its sentencing memo, it made no request to defense counsel for the information sought. Nonetheless, defense counsel will send the government a copy of Dr. Baranoski's resume. Also, Dr. Baranoski's services were authorized by this Court pursuant to the CJA e-voucher system.

The government stated that Dr. Baranoski's report contained some inaccuracies. Govt. Memo. p. 11. On October 13, 2025, defense counsel emailed a copy of Dr. Baranoski's report to the government and probation. Thereafter, some inaccuracies were discovered. Defense counsel addressed those inaccuracies in an email to the government and probation on October 20, 2025. Defense counsel explained that there were some corrections made to Dr. Baranoski's report. For example, on page two, Dr. Baranoski did not review records from MYI or HCC. She anticipated receiving the records but had not received them by the time she completed her report. Also, the date of the Miami-Dade police report detailing Mr. Estrada's presentment for an involuntary examination was 3/29/24 and not 8/29/24.

<u>General deterrence</u>: The government argued for a significant sentence in the instant case to deter others. Govt. Memo. p. 12. Defense counsel addressed the issue of general deterrence in his sentencing memo at pp. 16-18. In addition, the instant case has received nationwide publicity.[1] As a result, would-be perpetrators in the bitcoin world are already on notice that the benefits of committing similar crimes are not worth the risk of getting caught. The deterrence is the risk of getting caught and prosecuted, not the length of the sentence.

---

[1] It is defense counsel's understanding that the Law & Crime Network is interested in producing a documentary regarding the instant case.

ESTRADA-Reply to Government Sentencing Memo - 4

<u>**Photo of Baseball Bat in Car**</u>: The government produced an exhibit, namely a photograph of a baseball bat on the front passenger seat of a Lamborghini. Govt. Exhibit Doc. 181-1 at p. 16. The photo contained a caption, which read "Traces of blood found on the bat in the Lamborghini." As of the filing date of this Reply, defense counsel has been unable to identify any discovery document(s), including police reports, lab reports, or medical records, relating to traces of blood on the bat.

Dated this 30th day of October 2025

<u>/s/ David J. Wenc</u>
DAVID J. WENC
Fed Bar #ct00089
WENC LAW FIRM, LLC
184 Dusky Lane
Suffield, CT 06078
Tel. (860)371-6633
dwenc@wenclawfirmllc.com

## CERTIFICATION

I hereby certify that a copy of the above Reply was faxed, e-mailed and/or hand delivered on October 30, 2025, to AUSA Karen Peck and USPO Daniel Leone.

/s/ *David J. Wenc*
DAVID J. WENC
Fed Bar #ct00089
WENC LAW FIRM, LLC
184 Dusky Lane
Suffield, CT 06078
Tel. (860)371-6633
dwenc@wenclawfirmllc.com